19-8008. Good morning, your honors. May it please the court. Jason Wysoki on behalf of Appellant Goodman. Imagine you're putting together a 1,000-piece jigsaw puzzle, and you have most of these pieces in place. You can see there's a sleigh, there's some snow, a sack of presents, and someone in a red suit with white fur trim. But you're missing 10, 15 pieces that would reveal the face of the person in the sleigh. Without at least one of those pieces, you cannot say beyond a reasonable doubt whether or not it's the Grinch or Santa Claus. And that analogy is apt here because two of the main issues that we are asserting on appeal have to deal with whether or not there was sufficient evidence or there was such grave error that the substantial rights of Mr. Goodman were affected. I'd like to begin with the Crawford Sixth Amendment error, your honors. As this court knows, this is going to be reviewed under plain error because the issue was not preserved below. This issue is about the hearsay within hearsay testimony that Officer Dedemore testified to with regard to Mr. Blackburn's on-the-scene confession that he drove this car. And he drove the car that resulted in the deaths, the tragic deaths of three people. Now, that excited utterance that Mr. Blackburn said to a cop, I drove, I was driving, I'm a bad man, I'm the mid-city menace, I believe is what he says, that is very, very compelling evidence and it is the only direct evidence in this case of who was driving. But that evidence was immediately undermined by Officer Dedemore when he went beyond the scope of the question asked of him. He said Mr. Blackburn then recanted that statement. Now, the recantation of that statement was not heard by Officer Dedemore. It was heard by other officers when they were interrogating Mr. Blackburn a day later. Except when that, when Officer Dedemore said that, the judge had absolutely no way of knowing who Mr. Blackburn had made that comment to. At that moment, however, it wasn't until later that that was elicited that it was made to other state, other officers, right? That is correct, Your Honor. In fact, in the supplemental memorandum that you gave us, or your supplemental materials, it actually says it wasn't actually made to other officers. It was made to EMT people, right? No, Your Honor. The confession, so recantation, the recantation was made to officers when he was in the hospital. The statement to the EMTs was a doubling down of his confession where that's when he says he's the mid-city menace and that he's the one who was driving. He says that to the EMTs in the presence of other officers, officers other than Mr. Dedemore. All right, so let me ask you a different question. Right before the question that you say was, the answer was testimony, you don't have any problem with the question. No, I don't. All right. So with the answer, it was right after Officer Dedemore said that Blackburn smelled strongly of alcoholic beverage and had very slurred speech, correct? That is correct. So when Officer Dedemore says that, non-responsive answer, couldn't the judge reasonably say, I don't think it was testimonial, I don't think it was an aid of an investigation, I think he said that because he was drunk. And later corroborated that he's drunk, he's got blood alcohol content that will kill probably anybody in this courtroom, a .44. But he didn't know that at that point, but he knows that he's drunk. So why should the judge say, well, he was clearly saying that to aid an investigation, even though he's, that he reeked of alcoholic beverage? Well, Your Honor, I think at that moment, the moment that this recantation is over, and then inquire further of Officer Dedemore outside the presence of the jury and determine exactly what is going on here. Because this is such a significant piece of evidence in this case. I mean, imagine all, look at all the other evidence in this case. There is nobody who can say for certain who was driving this car because of the washing machine effect and nobody's wearing their seatbelts, it rolls over, it's on fire, people are pulled out by Good Samaritans. Nobody knows who's driving at the moment of this crash. And so when you have a person in that vehicle confessing on the scene that he was the driver, that is very, very critical evidence in this case. Well, I mean, it's not incumbent on a judge to call for a sua sponte board ire of a witness when there is significant testimony. You're saying that, if I understand your argument, it's not that the judge erred in failing to sua sponte exclude it, it's that the judge failed to sua sponte take a break and conduct his own board ire of the witness. I think they're essentially one and the same, Your Honor. I think to me that they're a lot different because if the judge either has a grand sua sponte exclude testimony based on a Sixth Amendment violation or he doesn't. And if you're saying that at the time that this Officer Deddemore blurts this out, that there's still no information that it was an out-of-court statement being offered for the truth of the matter asserted, that it was neither hearsay or testimonial, but that if the judge had inquired further, he would have found out that it was testimonial and that it was hearsay. Those are, to me, are two separate inquiries. Well, I think at the moment that Officer Deddemore testifies about this recantation, there's no doubt that it is hearsay because he's talking about what Mr. Blackburn says out of court. Mr. Blackburn isn't there. It's by definition hearsay. There may be some kind of thread that one could pull with further inquiry, which wasn't done, about whether or not it falls under an exception for the hearsay, one of the hearsay exceptions in 804. But what you have at that moment is a definitively hearsay statement that, without more information, does not fall under one of the exceptions. You don't know whether it's testimonial. At that very moment, you don't. So the court at that moment, sua sponte, can intervene and say, wait a minute, we need to figure out what this is because of its significant impact in this trial. Literally, what Officer Deddemore does is he says, Mr. Blackburn was driving the car. I know that because he confessed to it. That's why he took his blood, and that's why I concluded in my police report he was driving. And then, almost in the next breath, says, no, he wasn't because he said to me or to somebody else he wasn't driving. It was Mr. Goodman who was driving. So now you have two completely contradictory statements that really can become the fulcrum of a conviction in this case. But once Mr. Goodman's counsel on cross-examination demonstrates on, I believe it's page 179 of the first day of the transcript, that this is a statement made to officers while Mr. Goodman was questioned by officers, it is now clearly a testimonial statement that requires, at the very least, some kind of protection under the Sixth Amendment, such as procuring Mr. Blackburn, which was supposed to happen the next day and it doesn't. So saying it was so critical, why was it so critical? Because before Officer Deddemore ever takes the stand, before any defendant witness or before any government witness takes the stand, I don't know if you were trial counsel or not, but a defense counsel in opening statement said, not that Mr. Blackburn was driving, says, quote, well, Mr. Goodman wasn't driving, it was Mr. Seabering. So from the very inception of the trial, the defense's theory was that Mr. Seabering was driving, not that Mr. Blackburn was driving. Correct, Your Honor, but it's not the defense's job or obligation to prove who was and who was not driving. That is the burden on the government. And what the expert witness with regard to Mr. Seabering driving, Mr. Blackburn's confession, the eyewitness testimony pulling Ms. Sixtoes out first, that eyewitness saying, I think she was driving, that all creates reasonable doubt. Those are the 10 pieces in our puzzle that are missing, and we can't say who was driving reliably. This is a situation where the evidence is by no means overwhelming. It's far, far from overwhelming. And that brings us to the insufficiency of the evidence issue here. Before you switch to that issue, you've been approaching this as if it is hearsay, but it comes out in the trial in response to the question about why did you do other blood samples, correct? Yes, Your Honor. Didn't that suggest that it was not admitted for the truth of the matter asserted, but instead show why you went about and took Goodman's blood samples? Well, critically, the question of why he obtained Mr. Goodman's blood sample is never asked. That's why it's not a non-hearsay statement. I thought the question before he blurted this out was, did you ever ask that anybody else's blood be taken that night? And the answer to that question is yes or no. And the answer should be... And he blurted it out. Okay. Correct. So he's not asked why. So you have the question, and you have what he blurted out. Doesn't that indicate from the question that the testimony was not for the truth of the matter asserted, and that is Blackburn recanting, but instead to show why he went ahead and took somebody else's blood sample? No, Your Honor. And the reason why I disagree is because what you have is, as I said earlier, a statement, testimony by Officer Dedimore of something he directly heard about Mr. Blackburn confessing to this crime. And then, because he knows he's a government witness, and the government is not putting Mr. Blackburn on trial, they're putting Mr. Goodman on trial, in the next breath, he does everything he can to say, in effect, really it wasn't Mr. Blackburn, it was Mr. Goodman. And I took his blood sample, but why did he take Mr. Goodman's blood sample? The only basis to take Mr. Goodman's blood is the recanted confession by Mr. Blackburn. And counsel for the government, obviously skilled at their job, does not ask Officer Dedimore why they took Mr. Goodman's blood, because they know the answer is hearsay and creates Sixth Amendment problems. So they don't ask that question. But nonetheless, Officer Dedimore blurted it out. But then there would be hearsay. Before that, with the question, with the answer that's given, it's not hearsay because it's not for the truth of the matter asserted. But it is, because the truth of the matter asserted is, was Mr. Goodman driving? That is, that is the only thing in this case that's being questioned. That is the entire basis for the trial. They are offering, and Officer Dedimore is offering it. The only way we determined for what purpose this answer came in is by looking at the question to which it was responsive. No, I think you can look at the circumstances surrounding all of the questioning as well as the trial itself. Why are we there? What is the government trying to do? They're trying to convict Mr. Goodman or prove that he is the driver of this truck. Are you telling us that you think that the judge, when there's an objection made, has got to review all the surrounding circumstances before he can rule on an objection? No, Your Honor. What I think this situation presents is when a confession is discussed, testified to, and then- No, no, no, no. Yes. The question simply was, there was a question asked. Yes. And there was a response to that question, but to answer to Judge Murphy, as I understood, you said that before the judge can rule on that, he's got to look at what all is going on and what transpired. I don't think I've ever seen any law that says that. No, there is no law that says that, Judge Baldock. But what we're trying to demonstrate here, and what I think the facts clearly demonstrate, is that when you have such a significantly diametrically opposed testimony in one breath and then the other, that somebody is accusing the person who is sitting there on trial, who isn't present at trial, and who the government knows may not, or there's a good chance may not show up at trial, that is a situation that the court needs to sua sponte, intervene. But wait a minute, I took Judge Baldock's question as suggesting that judges need help during these trials, and it was incumbent upon the defense lawyer to ask for the conference, to take a break, and to discuss this. And because the judge doesn't know, all the judge knows is that there was a question asked as to why did you take somebody else's blood sample, and then there's blurting out. And it seems to me that the fault is not with the judge, but with counsel not following up and asking for a recess to discuss this. Or asking the judge to admonish the jury to ignore the answer. That's incumbent upon defense counsel. May I respond? Please. There are certainly a number of tools in defense counsel's toolkit at the time, and for reasons that are not clear in the record, those tools weren't used. But in response to both Judge Murphy and Judge Baldock's questions, to get to the heart of the issue, this is a Sixth Amendment Confrontation Clause issue, and the trial judge knew that a Confrontation Clause, a Sixth Amendment issue, is alone sufficient to create a violation of the Sixth Amendment and result in a reversal, and that's why this is not just a standard run-of-the-mill hearsay objection. So wait a minute. Considering the question and answers that I read, what is there to put the Sixth Amendment antenna up on the trial judge? Your Honor, the Sixth Amendment antenna should go up the moment that the answer is undermining the confession. Now, the officer who is testifying, his answer makes it seem as though ... But we're talking about confrontation. So what if there's, I mean, you know, there's recantation. What is there to specifically raise Sixth Amendment antennae? Yes. Well, Officer Dedamore, who is a police officer, is testifying. He then testifies that Blackburn said at the hospital later that it wasn't him who was intentionally recanted. From that testimony alone, the two sentences or two lines, rather, in the transcript, the judge should be able to at least understand that the statement was made to Officer Dedamore. Now, it turns out that that's not correct, which makes it hearsay within hearsay, but at that moment, it's a statement made to an officer, which implicates the Sixth Amendment because if Officer Dedamore is questioning him, you've got a testimonial situation. And the objection was? There was no objection, Your Honor. There was no objection. That is correct. Unfortunately. What if the statement from Mr. Blackburn was that he was not driving was to the EMT? Would that have been testimonial? If Mr. Blackburn had said to the EMT he was not driving? I do not think that would be testimonial because the EMT officer is not investigating. All right. Let me read to you from Mr. Jennings' supplemental report that you submitted in your motion to the EMS paramedic, Eric Hart, year of birth, 1987, advised me they heard Drew state he was driving the truck. They also advised Drew later recanted his statements, end quote. Yes. And then the, I'm blanking on the officer's name, who is actually doing the recorded statement of Mr. Blackburn the next day, during which Mr. Blackburn recanted his statements. FBI agents. Yes. Yeah. And you haven't said anything about the FBI agents, right? There was no, there was nothing that was elicited at trial about the FBI agents, the statements that Mr. Blackburn told to the FBI agents. Well, in other words, the next day, Mr. Blackburn reiterated what he had already told the EMT people to FBI agents, right? Well, what's unclear at trial, Your Honor, is, well, what is clear at trial, if I may continue, I know I'm way over my time, I apologize. What is clear from Officer Dedamore's testimony under cross-examination is that Mr. Blackburn's recantation is to officers at the hospital. There are multiple officers, including the FBI agent, who interview him during which he recants his confession or he says, I wasn't driving. Is it fair then, and I just want to make sure I understand the record, that Mr. Blackburn, according to the later testimony that was elicited when Mr. Officer Dedamore was on the stand, that he told other officers that he wasn't driving and they told Officer Dedamore? Correct. And that also, independently, Mr. Blackburn told EMT officials that he was not driving, he recanted his confession, and that the EMT officials either told those officers who told Officer Dedamore, or the EMT officials simply told Officer Dedamore. What I understand from Officer Dedamore's testimony, Your Honor, is that he heard it from officers. Right. And what we just don't know, whether Mr. Blackburn told the EMT, we know he told the EMT officials because of the document that you gave us that proves that, right? That's correct. And so what we don't know is whether the EMT officials that heard, or workers that heard the recantation told the other officers who relayed that information to Officer Dedamore, or whether or not Mr. Blackburn independently may have told the other officers who relayed that to Officer Dedamore. We just don't know. What we do know, Your Honor, is that Blackburn recants to the FBI agent. An FBI agent, I think, commonly is referred to as an officer. Officer Dedamore testifies that he heard on cross. He heard that from other officers, not other EMT folks. So we know for certain that Blackburn recanted to police under an interrogation situation, and that is the information that Officer Dedamore testifies to. Thank you. Thank you. Good morning, Your Honors. May it please the Court? Counsel? Your Honors, my name is Thomas Schott. I'm an assistant U.S. attorney in Cheyenne and represent the United States in this case. Your Honors, really just to back this out a little bit to more like a 10,000-foot view, or maybe I should say a 1,000-foot view, or even a 1,000-piece jigsaw puzzle, the only piece that's missing is the face. Is it Santo or the Grinch? And Judge Bacarek, you suggested this. Really what needs to be emphasized is that nobody thinks Drew Blackburn was driving. So to the extent that his so-called confession may have had any value, it was really undermined by the fact that it was not true. And nobody thought it was true. So that's really a red herring, and the same for any suggestion that Ms. Sixtoes might have been driving. There's just no credible evidence of that. The dispute was whether it was Mr. Goodman or Mr. Seabering. Whichever it was, the issue is a confrontational issue, and I'd like to hear your response in regards to that, because obviously the jury didn't believe that he was driving. So the argument is that you have a legal error here in that there was a violation of this man's rights because they admitted hearsay evidence that was confrontational, not confrontational. Well, anyway, you know where I'm going with the Sixth Amendment. Yes, Your Honor. The government's position really tracks the questions that the panel has asked, and the government's position is that, A, it was not hearsay. It was not offered for the truth of the matter asserted. Certainly, and admittedly, the answer to the question went beyond what was asked. But if we are looking at the purpose for which the evidence was offered, it was to explain the investigative step of having Mr. Goodman's blood drawn. That was continued in later testimony about how a search warrant was obtained. So the purpose is not for the truth of the matter asserted. The purpose is to explain the investigation. So that takes it outside the realm of the Sixth Amendment. And then also that it was not testimonial. And even as we stand here this morning, Your Honors, or as I stand, the circumstances of this recantation seem very unclear. Judge Bacharach, you were asking questions in that vein. Deputy Dedemore's testimony on page 196 or page 1979 of the original transcript on cross was defense counsel asks whether Drew Blackburn had spoken to the deputy. And Deputy Dedemore's response is, no, sir, he did not tell me. He told the deputies and officers at the Lander Sage West Hospital. But Judge Bacharach, as you point out, the supplemental report indicates that he, in fact, told one or more EMTs. So the circumstances just aren't clear. I would make one observation, Your Honors. Let me probe that. I mean, the judge has no way of knowing what Jennings' supplemental report is. I mean, we know it because the defense counsel submitted it to us. But all the judge knows is what Officer Dedemore said at the trial, which is that Blackburn had made the statement to other officers. Obviously, the judge has no way of knowing what Jennings said in his supplemental report. Is that fair? That's fair, Your Honor. I agree. Which goes to the point that was made that it's not plain error for the judge to not to intervene sui sponte. And in that regard, if you look at what Deputy Dedemore actually said, even that statement on cross-examination doesn't establish that it's testimonial. Dedemore says he told the deputies and officers at the Lander Sage West Hospital. So let's assume that's accurate. There's no testimony that it was in response to interrogation or questioning. It might have been another, quote unquote, excited utterance. We don't know. It's clear, at least to me, Your Honors, that Deputy Dedemore probably doesn't know the exact specifics of that situation. So it's not obvious to the judge that this is testimonial either. So we have, the context indicates it's not hearsay. In any questioning by officers, whether it's FBI or local officers, of Mr. Blackburn, we can't sometime along the line. But there was questioning by officers of Mr. Blackburn, correct? Yes, Your Honor. Was there any questions asked? Whether, who was the driver? Sure they asked, wasn't it Mr. Goodman? I believe in the, and Your Honor, in the supplemental FBI reports that are part of the proposed supplemental record, I believe that is discussed where Mr. Blackburn is saying, makes comments to the effect that yes, Mr. Goodman was driving. Well, and that is part of his testimony. And that is, it wasn't me, it was Goodman. So doesn't at least that part of the statement make it testimonial? To the extent that we can reliably say, what is testimonial, Your Honor? Which is- Well, you're a ways down that path. If the answer is a response to police questioning, correct? That may be accurate, Your Honor. It's at least a step down the path. Will you give me that? It's certainly a step down the path, Your Honor. I mean, the case that I quoted for the definition of testimonial talks about whether the purpose is to provide evidence, I think, or words to that effect. So certainly, I think that police questioning in a clearly investigative sort of scenario, responses to those questions, yes, that would almost certainly be testimonial. And in this record, is there a transcription of all the police interrogation? Not that I'm aware of, Your Honor. Isn't that a good reason to allow the supplementation of the record? Isn't that what he asked for? The supplementation of the record would really only be relevant to the extent it would show plain error, Your Honor. So yes, if there were- The specifics of what he asked to supplement. Doesn't he ask to supplement with transcripts of police interrogation? I believe it's two recordings of, or maybe a recording in two parts. I believe it's a recording in two parts of an FBI interview from, I think, the day after the crash. Which could well have been when he says, not only it wasn't me, but it was Goodman. I believe he did say that, Your Honor. And it probably is in those transcripts that he wants to supplement the record with, correct? The recording and then the FBI- Not a transcription or recording, correct? Yes. But the material point, Judge Murphy, is that was not the trial testimony. Deputy Dedamore's trial testimony about this recantation was that Blackburn had recanted to deputies and officers at the hospital. I believe the FBI interview was in the jail the next day. So that was not the testimony. Now, let me understand. Are you saying that even though this is a vote to supplement the record, that what he's asking to supplement is not part of the trial court record? Is that what you're telling us? Yes. At least to my knowledge, Your Honor, those FBI interviews with Mr. Blackburn were never before the trial court. Have you seen what he's asked to supplement the record? Have you looked at that? I've looked at the written materials, Your Honor. I can't recall if I've actually listened to the interviews. Be that as it may, my question to you strictly is, was that material ever before the district court and the jury in this case? No. You say that if you look closely at his trial testimony, and that is the officer, is it his reference to the accusation of Goodman could not have come from the FBI agent whose recordings we were asking to supplement the record with, but had to come from a different officer because it came at the Sage West Lander Hospital? Is that your position? Yes, Your Honor. Thank you. Now. That's right. You don't belabor it. Yes. I just want to understand. That's right, Your Honor. The FBI interview was later. I think it was at the jail. I think it was the next day. It just wasn't before the district court. So it's really not. You've answered my question. Go ahead. Your Honors, I really don't have anything else to offer on the confrontation clause issue, except I would echo the comments that have been made. The defense counsel, of course, could have objected, could have asked for a limiting instruction. He may have had tactical reasons for not doing that, I guess, not wanting to emphasize the point. But this is an issue to the extent that it was an issue that really needed to be addressed below timely. It's not an issue that we're in a position to really deal with here. Well, are you saying that it was never an error to begin with? Or are you saying that the error wasn't plain? It's here before us, I believe, on plain error, isn't it, counsel? It's plain error, Your Honor. And I'm saying both. I'm saying it's not error, and it wasn't plain. And that it didn't prejudice the defendant, because in the final analysis, and I won't get into the sufficiency of the evidence arguments, but in the final analysis, the evidence that he was driving was very strong. So he wasn't prejudiced in any of it. Unless there's anything further, Your Honors, I would ask that the conviction and sentences be affirmed. Thank you. Does he have a little? No. I tried. I tried. All right, we're going to take a, I do want to comment to both counsel. Both sides did an excellent job in your briefs and in your advocacy today. Thank you. This matter will be submitted, and we'll take a.